AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
JUN 26 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

One (1) Samsung Cellular Telephone
Model: Galaxy S7
MEID#: 089 820 800 706 564 148

Case No. **19MJ2674**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated herein by reference).

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated herein by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC §371 | Conspiracy |
| 8 USC §§1324(a)(2)(B)(ii), (iii) | Bringing in Aliens for Financial Gain, Bringing in Aliens Without Presentation |
| 8 USC § 1324(a)(1)(A)(ii) | Transportation of Certain Aliens |

The application is based on these facts:

See attached affidavit of HSI Special Agent Gerald Torello.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Gerald Torello, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/26/19

*Judge's signature*

City and state: San Diego, California

Hon. Barbara L. Major, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

    One (1) Samsung Cellular Telephone (Target Telephone)
    Model: Galaxy S7
    MEID#: 089 820 800 706 564 148

Target Telephone is currently in the possession of the United States Department of Homeland Security, Customs and Border Protection, and being stored in the San Ysidro, California Port of Entry located at:

    720 East San Ysidro Boulevard
    San Ysidro, California 92173

SLt
X8893
6/25/19

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the cellular/mobile device described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in Target Telephone for evidence described below. The seizure and search of Target Telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from Target Telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 1, 2019 to June 11, 2019:

    a.    tending to indicate efforts of alien smuggling or conspiracy to smuggle aliens into and within the United States;

    b.    tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to smuggle aliens into the United States from Mexico, or transport aliens within the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in alien smuggling or conspiracy to smuggle aliens into or within the United States;

    d.    tending to identify travel to or presence at locations involved in alien smuggling or conspiracy to smuggle aliens, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to Target Telephone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 18, U.S.C. § 371 – Conspiracy; Title 8, U.S.C. § 1324(a)(2)(B)(ii) – Bringing in Aliens for Financial Gain; Title 8, U.S.C. § 1324(a)(2)(B)(iii) – Bringing in Aliens Without Presentation; and Title 8, U.S.C. § 1324(a)(1)(A)(ii) – Transportation of Certain Aliens..

SLE
X8893
6/25/19

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A SEARCH OF:<br><br>One (1) Samsung Cellular Telephone<br>Model: Galaxy S7<br>MEID#: 089 820 800 706 564 148 | CASE NO.:_____<br><br>**AFFIDAVIT OF SPECIAL AGENT GERALD TORELLO IN SUPPORT OF SEARCH WARRANT** |
|---|---|

I, Gerald Torello, Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, having been duly sworn, depose and state as follows:

1. This affidavit is made in support of an application to search the following cellular telephone:

> One (1) Samsung Cellular Telephone (Target Telephone)
> Model: Galaxy S7
> MEID#: 089 820 800 706 564 148

as described in Attachment A, and seize evidence of crimes, specifically: Title 18, U.S.C. § 371 – Conspiracy; Title 8, U.S.C. § 1324(a)(2)(B)(ii) – Bringing in Aliens for Financial Gain; Title 8, U.S.C. § 1324(a)(2)(B)(iii) – Bringing in Aliens Without Presentation; and Title 8, U.S.C. § 1324(a)(1)(A)(ii) – Transportation of Certain Aliens.

2. Target Telephone was seized from Jose Angel Magana ("Magana") following his arrest by Customs and Border Protection Officers on June 11, 2019 at the San Ysidro, California Port of Entry (San Ysidro POE).

3. Target Telephone is currently in the possession of U.S. Customs and Border Protection (CBP), Office of Field Operations at the San Ysidro, California Port of Entry.

4. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the items to be seized set forth in Attachment B (incorporated herein) will be found in the item to be searched as described in Attachment

A (incorporated herein). Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## EXPERIENCE AND TRAINING

5. I am a Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), since October 2016. I am assigned to a Border Enforcement Security Taskforce (BEST) and was most recently assigned to a Contraband Smuggling investigations group. I have conducted numerous criminal investigations of or relating to contraband smuggling and other crimes. I am a graduate of the Criminal Investigator Training Program and the HSI Special Agent Training program at the Federal Law Enforcement Training Center (FLETC). I have received training in investigating alien smuggling, identifying immigration violations, and enforcing numerous immigration and customs laws within the United States. Prior to my employment with HSI, I was employed as a United States Border Patrol Agent within the DHS, Customs and Border Protection (CBP), United States Border Patrol (USBP) from February 2008 until October 2016, having graduated from the USBP Basic Border Patrol Training Academy at the FLETC located in Artesia, New Mexico. The 20-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as training in Title 21 United States Code. My training has also included the use of cellular and digital telephone and other electronic devices used by smugglers in the normal course of their illicit activities. In the course of my duties, I have routinely worked as the case agent and assisted other agents in directing specific contraband related investigations. I have also worked as a surveillance agent and observed and recorded movements of individuals trafficking contraband and of those suspected of trafficking contraband. Additionally, I have participated in the execution of numerous search and arrest warrants. I have interviewed defendants, witnesses and informants relative to their illegal smuggling of contraband.

SLE
X8893
6/25/19

6. Through these experiences, I have gained a working knowledge and insight into the normal operational habits of smugglers, with particular emphasis on those who attempt to import contraband into the United States from Mexico. I have also consulted with numerous agents and law enforcement officers who have investigated these type of cases.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for alien and drug smugglers to work in concert with other individuals and to do so by utilizing cellular telephones and portable radios to maintain communications with co-conspirators in order to further their criminal activities. I am also aware that it is a common practice for alien and drug smugglers to communicate with the smuggled aliens regarding smuggling arrangements and payment utilizing cellular telephones and portable radios. Conspiracies involving alien and drug smuggling generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, and phone numbers of co-conspirators and aliens to be smuggled.

8. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of transnational alien and drug smuggling investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

9. Based upon my training and experience as an HSI Special Agent, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Alien smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

   b. Alien smugglers will use cellular telephones because they are able to actively monitor the progress of the illegal aliens while they are in transit.

3

c. Alien smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time the smuggled aliens will arrive at predetermined locations.

d. Alien smugglers will use cellular telephones to direct drivers to synchronize a drop off and/or pick up time of the smuggled aliens.

e. Alien smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings; and

f. Alien smugglers will use cellular telephones to make arrangements with the smuggled aliens prior to the smuggling event, and to arrange for payment after the smuggling event.

10. Subscriber Identity Module ("SIM") Cards also known as subscriber identity modules are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card utilized in connection with that telephone.

### FACTS SUPPORTING PROBABLE CAUSE

11. On June 11, 2019, at approximately 0224 hours, Magana was the driver and sole visible occupant of a black 1981 Ford F-100 (the vehicle) in the pre-primary area of the vehicle inspection lanes at the San Ysidro POE.

12. A CBP Officer Canine Enforcement Officer (CEO) was conducting pre-primary roving operations when his Narcotics and Human Detection Dog (NHDD) alerted to the vehicle.

13. During primary inspection by a CBP Officer, Magana stated that he was on his way to Chula Vista, California and had nothing to declare from Mexico.

14. CBP Officers removed Magana from the vehicle and escorted him to the security office and another CBP Officer drove Magana's vehicle into the vehicle secondary inspection area for further inspection.

SLE
X8893
6/25/19

15. In secondary inspection, CBP Officers conducted an inspection of Magana's vehicle, discovered one female individual, later identified as C.L.V. (identified by her initials only because she is a minor under the age of 18), concealed under the bench seat of the vehicle that Magana had been sitting on, and extricated C.L.V.

16. CBP Officers escorted C.L.V. to secondary inspection and queried her by 10-digit fingerprint and photograph comparison through the Integrated Automated Identification System (IAFIS) and the Automated Biometric Identification System (IDENT) with negative results. CBP Officers interviewed C.L.V. and learned that C.L.V. is a minor, citizen of Mexico without any documents to enter or remain the United States.

17. CBP Officers conducted an interview of C.L.V., with the aid of an interpreter, in the Mixteco language. In summary, C.L.V. stated she was a citizen of Mexico, born in Santiago Tilapa, Oaxaca, Mexico, without legal documents to enter, pass through, or reside in the United States. C.L.V. stated she has never lived in the United States, and this is her first apprehension.

18. C.L.V. stated her father made the smuggling arrangements on her behalf for $14,000.00 U.S. dollars. C.L.V.'s final destination, if successful, was Santa Maria, California to reunite with family.

19. Prior to her apprehension, a male driver picked her up, assisted her into the under-seat area, and began driving. C.L.V. described the driver as a large male, bald, and did not have facial hair. C.L.V. also stated that she spoke Spanish to the driver and referred to him as *"Chofer"* (Spanish for driver). C.L.V. stated that while she was concealed underneath the bench seat, the male driver asked her if she was okay, however C.L.V. did not respond.

20. CBP Officers placed Magana under arrest for Title 8, U.S.C., Sec. 1324(a)(2)(B)(iii) – Bringing in Aliens Without Presentation.

21. Magana claimed ownership of Target Telephone. CBP Officers seized Target Telephone from Magana following his arrest.

22. Based on my experience and training, consultation with other law enforcement officers experienced in alien and drug smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the alien smuggling activities of Magana and co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the cellular telephones described herein.

23. Finally, alien smuggling conspiracies require detailed and intricate planning to evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Additionally, co-conspirators are often unaware of an alien smuggler's arrest and will continue to attempt to communicate with them after the arrest to determine the whereabouts of their human cargo. A law enforcement database check revealed that Magana drove the vehicle across the United States/Mexico border on thirty-nine (39) occasions over the last six months up to and including June 11, 2019. Based on my training and experience, individuals such as Magana will attempt to minimize the amount of time they were involved in their smuggling activities and often times are actually involved for weeks and months longer than they claimed to be involved. Given those facts, I respectfully request permission to search Target Telephone for data beginning on January 1, 2019, up to and including June 11, 2019.

**SEARCH PROTOCOL**

24. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books

SLE
X8893
6/25/19

and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

25. Following the issuance of this warrant, I, or an authorized agent, will collect the subject cellular telephones and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

26. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

27. Following the issuance of this warrant, I, or an authorized agent, will collect the subject cellular telephone and, with assistance if necessary from cellular telephone forensic examiners, will attempt to securely power the device, identify

7


SLL
X8893
6/25/19

1 whether it is protected by a personal identification number (PIN), determine or
2 circumvent the PIN and image or retrieve data subject to seizure pursuant to this warrant
3 from the device. The search of the device or of an image on the data on the device will
4 be limited to identifying and seizing data subject to seizure pursuant to this warrant and,
5 in any event, will be limited to only the information to be found on basic cellular
6 telephones: digital, cellular, and/or telephone numbers and/or direct connect numbers
7 assigned to the device; call and direct connect history information; list of contacts stored
8 on the device; text messages stored on the device; and, if equipped as a camera,
9 photographs and videos stored on the device. In the event that I or other personnel
10 lawfully conducting the analysis identify information pertaining to crimes outside the
11 scope of the warrant, such information will not be used in any way unless a new warrant
12 is obtained to search for such information.

13     28. I, or any other duly authorized agent, will personally serve the warrant
14 requested above, and will be assisted by other duly authorized agents.

## CONCLUSION

16     29. Based on all of the facts and circumstances described above, there is
17 probable cause to conclude that Magana used Target Telephone to facilitate the alien
18 smuggling offense. In this case, Magana was the driver and sole occupant of a vehicle
19 containing one undocumented alien concealed under the bench that he was sitting on.
20 Target Telephone was likely used to facilitate the offenses by transmitting and storing
21 data, which constitutes evidence, fruits, and instrumentalities of violations of Title 18,
22 U.S.C. § 371 – Conspiracy; Title 8, U.S.C. § 1324(a)(2)(B)(ii) – Bringing in Aliens for
23 Financial Gain; Title 8, U.S.C. § 1324(a)(2)(B)(iii) – Bringing in Aliens Without
24 Presentation; and Title 8, U.S.C. § 1324(a)(1)(A)(ii) – Transportation of Certain Aliens.

25     30. Because Target Telephone was seized at the time Magana's arrest for this
26 offense, there is probable cause to believe that evidence of illegal activity committed by
27 Magana continues to exist on Target Telephone.

SLt
X8893
6/25/19

31. Based upon my experience and training, consultation with other agents in alien and drug smuggling investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B (incorporated herein) are likely to be found in the property to be searched described in Attachment A (incorporated herein).

32. WHEREFORE, I respectfully request that the court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers to search the item described in Attachment A, and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Gerald Torello
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this __26__ day of June 2019.

_____
HON. BARBARA L. MAJOR
United States Magistrate Judge

9